UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

No. 08-cr-789-6 (RJS)
ORDER

MILTON SAMUELS,

Defendant.

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is Defendant Milton Samuels's pro se motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (the "First Step Act"). (Doc. No. 489.) The government opposes that motion. (Doc. No. 493.) For the reasons discussed below, Samuels's motion is denied.

**I. Background**

The Court previously has recounted the facts surrounding Samuels's conviction in some detail, *see McLean v. United States*, Nos. 12-cv-1954 (RJS), 12-cv-7362 (RJS), 12-cv-7559 (RJS), 08-cr-789 (RJS), 2016 WL 3910664, at *2 (S.D.N.Y. July 13, 2016); *United States v. Samuels*, No. 08-CR-789-6 (RJS), 2020 WL 7696004, at *1 (S.D.N.Y. Dec. 28, 2020), and will therefore reference only those facts necessary to resolve the pending motion.

On November 5, 2008, a grand jury in the Southern District of New York returned an indictment charging Samuels with participating in a conspiracy to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Doc. No. 40.) On February 18, 2009, the grand jury returned a superseding indictment that re-charged the narcotics conspiracy count and added a second count charging Samuels with using and possessing a firearm in furtherance of the drug conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. No. 70.)

Trial commenced on  March 16, 2009 and the jury convicted Samuels on both counts nine days later.  On November 13, 2009, the Court sentenced Samuels to 276 months' imprisonment, which was significantly lower than his Sentencing Guidelines range of life imprisonment.[1]  (Doc. No. 176 at 40.)  In doing so, the Court highlighted the seriousness of Samuels's offense and the fact that he had perjured himself during trial.  (*Id.*)  Samuels thereafter appealed his conviction and sentence, (Doc. No. 162), and the Second Circuit affirmed the judgment in its entirety, *see United States v. Sanchez*, 419 F. App'x 27, 30–33 (2d Cir. 2011).  The Supreme Court subsequently denied Samuels's petition for a writ of certiorari.  *See Samuels v. United States*, 565 U.S. 884 (2011).  According to the Bureau of Prisons ("BOP") website, Samuels's current projected release date is May 28, 2028.  *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 27, 2023).

Samuels filed his first motion for compassionate release in September 2020, arguing that various comorbidities increased his risk of contracting a serious case of COVID-19.  (Doc. No. 434 at 3–5.)  On December 28, 2020, the Court denied the motion since Samuels had failed to exhaust his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 450 at 4–6.)  On March 24, 2023, Samuels renewed his request for compassionate release.[2]  (Doc. No. 489 at 1.)  Samuels now asserts that the Court should reduce his sentence to time served or recommend that the Bureau of Prisons (BOP) transfer him to home confinement given "intervening

---

[1] Under then-existing Second Circuit precedent, *see United States v. Williams,* 558 F.3d 166 (2d Cir. 2009), *cert. granted, vacated, and remanded*, 562 U.S. 1056 (2010), the Court imposed a sentence "strictly for the violation of 21 U.S.C. § 846" and did not impose a consecutive sentence for Samuels's violation of 18 U.S.C. § 924(c).  (Doc. No. 159 at 2.)

[2] Samuels asserts that he submitted a compassionate release request to the Warden of FCI Fort Dix on January 30, 2023 and that the Warden has not responded to his request for over thirty days.  Accordingly, he maintains that he has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(2).  The government does not dispute that contention (Doc. No. 493), and has therefore forfeited any argument to the contrary, *see United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (holding that the exhaustion requirement is a "claim-processing rule" rather than a "jurisdictional limitation" and may be waived or forfeited by the government (internal quotation marks omitted)).

changes in the law," his "medical issues," and "the fact that he is not being afforded adequate medical treatment." (Doc. No. 489 at 2, 5.)  The government opposes the renewed motion, arguing that "Samuels has not demonstrated 'extraordinary and compelling reasons' for a reduction of his sentence and [that] the requested release is inconsistent with the sentencing factors under 18 U.S.C. § 3553(a)." (Doc. No. 493 at 7.)

## II. Discussion

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  One such statute – the First Step Act – provides that "the Court may 'reduce' a defendant's sentence where 'extraordinary and compelling reasons warrant such a reduction,' and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and 'applicable policy statements issued by the Sentencing Commission.'"  *United States v. Felix*, No. 12-cr-322 (RJS), 2020 WL 4505622, at *1 (S.D.N.Y. Aug. 4, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Even assuming that Samuels's has demonstrated an extraordinary and compelling reason for a sentencing reduction, the Court concludes that a sentencing reduction is unwarranted in light of the section 3553(a) factors.  Section 3553(a) requires judges to consider, among other factors, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the Sentencing Guidelines and pertinent policy statements issued by the Sentencing Commission; and (4) "the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty of similar conduct."[3]  18 U.S.C. § 3553(a).

As the Court previously emphasized during sentencing, the nature of Samuels's drug trafficking activity is "tremendously serious." (Doc. No. 176 at 38.) Samuels actively participated in a conspiracy to import and distribute hundreds of kilograms of cocaine via container from Panama to the Port of Newark, provided armed security to a leader of the conspiracy, possessed a firearm in furtherance of this conspiracy, and then attempted to obstruct justice by perjuring himself at trial. (Doc. No. 176 at 38–40.) The amount of drugs at issue here had a "wholesale value in the tens of millions of dollars" and could have been used to supply "hundreds of thousands" of individual doses of cocaine, with a "huge[ly] negative impact" on individuals, families, and society at large. (*Id.* at 38–39.) The Court also recognized the need for the sentence to promote "respect for the law" and "deter Mr. Samuels and others from engaging in this kind of conduct in the future." (*Id.* at 36.) And while the Court was mindful of Samuels's "medical needs, his psychiatric and psychological needs, his needs for treatment or educational opportunities, [and] vocational training," it nonetheless imposed a sentence of 276 months' imprisonment as "sufficient but not more than necessary" to meet the objectives of sentencing set forth in section 3553(a). (*Id.* at 48.) None of the arguments raised in Samuels's latest motion alter that conclusion.

Samuels contends that he is entitled to relief because if he were sentenced today "there lies a reasonable likelihood that he would have received a different sentence based on intervening changes in the law." (Doc. No. 489 at 5.) But the change in law on which Samuels relies – *United*

---

[3] In May 2023, the Sentencing Commission issued a notice of its proposed amendments to the Sentencing Guidelines. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254 (May 3, 2023). Among other things, the proposed amendments provide guidance concerning what constitutes "extraordinary and compelling" circumstances for a sentence reduction under section 3582. *Id.* But because the Court has assumed, for purposes of this Order, that Samuels has demonstrated an extraordinary and compelling reason warranting relief, the proposed amendments do not impact the Court's analysis here, which turns on the Court's consideration of the section 3553(a) factors.

*States v. Haymond*, 139 S. Ct. 2369 (2019) – is inapplicable here.  In *Haymond*, a plurality of the Supreme Court concluded that 18 U.S.C. § 3583(k), which sets forth certain mandatory minimum sentences upon revocation of supervised release, violated a defendant's Fifth and Sixth Amendment rights by leaving factfinding to the judge.  *See Haymond*, 139 S. Ct. at 2382.  But section 3583(k) is not implicated here.  Moreover, it was the jury – not the Court – that determined that the conspiracy involved more than five kilograms of cocaine, triggering Samuels's ten-year mandatory minimum sentence pursuant to 18 U.S.C. § 841(b)(1)(A).  (Doc. No. at 367 at 2.)  And while the Court did engage in factfinding for purposes of calculating the offense level under the advisory Sentencing Guidelines, nothing about that process violated the Sixth Amendment.  *See Alleyne v. United States*, 570 U.S. 99, 117 (2013) (holding that courts have authority to consider many factors to "select a sentence within the range authorized by law"); *United States v. Singletary*, 458 F.3d 72, 80 (2d Cir. 2006) (observing that "judicial fact-finding is permissible – indeed, required – under an advisory Guidelines regime" (emphasis omitted)); *United States v. Jimenez*, 586 Fed App'x 50, 56 (2014) (holding that "factfinding used to guide judicial discretion in selecting a punishment" above the statutory minimum under 18 U.S.C. § 841(b)(1)(A) does not violate the Sixth Amendment).  Thus, contrary to Samuels's argument, Samuels would be facing the same Guidelines range (life) that he faced when he was originally sentenced on Count One.  Moreover, in light of the Supreme Court's subsequent opinion in *Abbott v. United States*, 562 U.S. 8 (2010), which reversed the Second Circuit's holding in *United States v. Williams,* 558 F.3d at 166, Samuels would also be facing an additional (and mandatory) five-year consecutive sentence on Count Two.  Therefore, Samuels is clearly mistaken when he insists that there's "a reasonable likelihood that he would have received a different sentence based on intervening changes in the law." (Doc. No. 489 at 5.)

The bulk of Samuels's submission is dedicated to describing his various health ailments, including his facial weakness from Bell's Palsy, nerve damage, spine degeneration, and pain in his neck back, shoulder, and leg.  (Doc. No. 493 Ex. B at 1, 14.)  He notes that he has also been diagnosed with diabetes mellitus (though medical records from the BOP that were attached to the government's brief note that Samuels's sugar levels no longer "meet [the] criteria for a diagnosis of diabetes").  (Doc. No. 493 Ex. A at 11.)  He also complains that he has received inadequate medical care while in custody (Doc. No. 489 at 3), and that his various health conditions continue to put him at increased risk of contracting a serious illness from COVID-19, even though he has twice refused a COVID-19 vaccine and already has contracted the virus without incident (Doc. No. 493 Ex. A at 8–10, 13).  But even if these arguments – which are primarily directed to Samuels's contention that he has demonstrated compelling and extraordinary reasons warranting a sentencing reduction under the first prong of section 3582 – are also relevant to the Court's assessment of the section 3553(a) factors, they do not alter the Court's conclusion that a sentencing reduction is unwarranted.  Assuming the truth of Samuels's assertions concerning the present state of his health and the treatment options available while in BOP custody, the Court remains convinced that a sentence reduction is not justified in light of the section 3553(a) factors.  At the time of Samuels's sentencing in 2009, the Court was fully aware that Samuels would age and that he would likely incur the kinds of physical ailments that often affect inmates, and non-inmates, of advancing years.  The conditions described by Samuels – even in the context of the COVID-19 pandemic – do not alter that assessment.

Finally, Samuels contends that a sentencing reduction is justified on the basis of his remorse and rehabilitative efforts while in custody.  While "evidence of post[-]sentencing rehabilitation may be highly relevant" in considering a motion for compassionate release, *United*

*States v. Sanchez*, No. 01 CR. 74-2 (PAC), 2022 WL 4298694, at *4 (S.D.N.Y. Sept. 19, 2022)

(quoting *Pepper v. United* States, 562 U.S. 476, 491 (2011)), Congress has instructed courts to

consider *all* the "factors set forth in section 3553(a) to the extent that they are applicable," 18

U.S.C. § 3582(c)(1)(A).  The Court therefore cannot consider any one factor in isolation.  And

when Samuels's rehabilitative efforts and recent manifestations of remorse are considered in

tandem with the many other factors the Court must consider under section 3553(a), the Court

remains convinced that a sentence of 276 months is necessary to meet the objectives of sentencing.

*See, e.g.*, *Sanchez*, 2022 WL 4298694 (concluding that despite the defendant's rehabilitation, the

section 3553(a) factors weigh against modifying the defendant's sentence); *United States v. Frias*,

No. 01-cr-307 (JFK), 2022 WL 3700088 (S.D.N.Y. 2022) (same); *United States v. Davis*, No. 12-

cr-712 (SHS), 2020 WL 3790562 (S.D.N.Y. 2020) (same).[4]

### III.  Conclusion

For the reasons set forth above, the Court remains persuaded that a below-Guidelines

sentence of 276 months is sufficient, but not more than necessary to meet the various objectives

of sentencing set forth in section 3553(a).  Accordingly, Samuels's motion for compassionate

release is DENIED.

---

[4] Samuels alternatively asks the Court to recommend that he be placed in home confinement, presumably pursuant to the CARES Act, Pub. L. No. 116–136, 134 Stat. 281 (2020), and the Attorney General's April 3, 2020 memorandum ("AG Memo") concerning the placement of prisoners in home confinement during the COVID-19 pandemic.  But while the CARES Act and the AG Memo provided the BOP with authority to place prisoners in home confinement during the "covered emergency period," CARES Act § 12003(b)(2), that period expired on May 11, 2023, thirty days after the national COVID-19 emergency ended, *see* Pub. L. No. 118-3, 137 Stat. 6 (2023).  Accordingly, the BOP no longer has authority under the CARES Act to place Samuels in home confinement for the remainder of his sentence, and the Court therefore will not recommend that it do so.

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 489 and mail a copy of this Order to Samuels at his current address.

SO ORDERED.

Dated:      August 4, 2023
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation